# EXHIBIT 1

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.:

---

BRIAN BURKE,

      Plaintiff,

  v.

NATIONAL GRID USA SERVICE
COMPANY, INC.,

      Defendant.

---

## COMPLAINT

This Complaint arises from the actions of the Defendant and/or its employees in discriminating against and Plaintiff, Brian Burke, based on Mr. Burke's perceived and/or actual disability and sexual orientation.

### Parties

1. Plaintiff, Brian Burke, is a resident of Charlton, Massachusetts.

2. Defendant, National Grid USA Service Company, Inc., is a domestic, for-profit corporation with a principal place of business located at 40 Sylvan Road, Waltham, Massachusetts, 02451.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction pursuant to M.G.L. c. 212, § 3.

4. This Court has personal jurisdiction over Defendant pursuant to M.G.L. c. 223A, §3, because Defendant transacted business within the Commonwealth.

5. Venue is proper in this Court pursuant to M.G.L. c. 223, §1, because Plaintiff resides in Worcester County.

6. Plaintiff received his private right to sue letter from the Attorney General's office on or about June 8, 2021. **See Exhibit A.**

7. Plaintiff filed his complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about June 23, 2021.

8. The EEOC closed Plaintiff's case on or about December 27, 2021 and issued a notice of right to sue. **See Exhibit B.**

## Factual Allegations

9. Plaintiff, Brian Burke began working for National Grid USA Service Company, Inc. ("National Grid") in December 2016, as a supervisor for In-House Construction.

10. At the time of his hire, Mr. Burke already had fifteen (15) years' experience in the construction industry.

11. Before his employment with National Grid, Mr. Burke was involved in a non-work-related accident, where he hit his head on the boom of a truck.

12. Mr. Burke disclosed this accident during his interview with National Grid.

13. In fact, Mr. Burke was still in bandages and a neck brace during his initial interview.

14. Mr. Burke specifically applied for the position of Supervisor, In-House Construction, because the job did not require that he operate heavy machinery.

15. Though the original job posting said a commercial driver's license was preferred, his position at National Grid did not require that Mr. Burke obtain or maintain a commercial driver's license ("CDL").

16. After Mr. Burke's termination, the position posting specifically mentioned that a CDL was not required.

17. His position at National Grid did not require that Mr. Burke operate heavy machinery, nor did Mr. Burke operate heavy machinery during his employment with National Grid.

18. In fact, because Mr. Burke wasn't a union member, whether he held a CDL or not was immaterial; only union workers were allowed to drive the machinery and trucks that required CDL licensing.

19. If Mr. Burke had driven said trucks or machines, it would have automatically started a grievance under the union agreement with National Grid.

20. As a result of his previous fifteen years' experience in the construction industry, Mr. Burke was the holder of a number of specialty licenses, including a CDL, DOT-medical card, and hoisting license.

21. Even though these were not a requirement of his position with National Grid, he kept his licenses up to date while employed with National Grid.

22. Mr. Burke did this mainly as it fostered respect among his subordinates, and they were more likely to trust and listen to a supervisor who had experience doing the very job they were being asked to do.

23. Mr. Burke never, at any time during his employment with National Grid, drove any vehicle over 10,000 pounds nor any other vehicle requiring a CDL.

24. During his employment with National Grid, Mr. Burke had an exemplary employee record.

25. He would regularly work sixty-five plus hours per week for National Grid.

26. He developed the number of employees in his department from five (5) up to twenty-two (22) employees, three times the number of employees as was usual for senior supervisors.

27. He oversaw equipment operators and field auditors, supervised contractors, and oversaw material storage and vehicle inspections.

28. Remarkably, Mr. Burke did all this without one safety issue or other problem for his entire tenure at National Grid.

29. During a failed transformer incident in 2021, rather than bring in a transformer from out of state, Mr. Burke planned and executed the transportation and installation of a spare 80,000-pound transformer in only three days, with an estimated savings to National Grid of $250,000 in labor alone.

30. In a letter dated January 12, 2021, Director of Complex Construction, New England, Andrew Schneller thanked Mr. Burke for his hard work over the past year.  Mr. Schneller wrote, "You demonstrated the *company values* throughout this extraordinarily challenging year," recognized that Mr. Burke "*made it happen* by delivering challenging projects and leading [Mr. Burke's] teams through storm events," and praised his ability to adapt the work to covid protocols while keeping safety in the forefront.  **See Exhibit C.**

31. In a letter dated January 28, 2020, Brian Gemmell, Director Schneller, and Manager Endrit Fiku, recognized Mr. Burke's substantial contributions to Substation In-House Construction, New England, in reaching the milestone of six (6) years without a lost time incident, stating this accomplishment demonstrated Mr. Burke's commitment to excellent work and the core values of National Grid: keeping employees safe while providing safe, reliable service to National Grid's customers.  **See Exhibit C.**

32. Mr. Burke's team was recognized for achieving a 94% reduction in group Road Traffic Collisions over three years. **See Exhibit C.**

33. Because Mr. Burke kept his CDL and DOT health card, he was subject to random drug testing.

34. In February 2021, National Grid subjected Mr. Burke to a random drug test.

35. Unlike former drug tests, the form accompanying the drug test did not have a location for disclosing any medication that a person is taking.

36. Usually, medications are disclosed to the testing company and the testing company does not flag those drugs as illicit or illegal in the running of the test.

37. The employer is only given a pass/fail from the testing company, and the employer is not privy to the medication list.

38. Mr. Burke passed the random drug test given in February 2021.

39. Due to his prior injuries, Mr. Burke was periodically on a number of prescription medications.

40. He had been cleared by his doctor to work, drive, and operate as normal, while taking these medications.

41. His doctor considered him medically stable with no side effects from any medications.

42. Because he was concerned about the lack of medication exclusion, while waiting for the results, he contacted National Grid's Health and Wellness Manager to disclose the prescriptions he was taking.

43. Mr. Burke was assured by the Health and Wellness Manager that his information was confidential and that there was no problem with the disclosed medications.

44. She then set up a meeting with a nurse to discuss Mr. Burke's medical condition.

45. When Mr. Burke met with the nurse, she did not seem to understand the situation and made a number of false assumptions Mr. Burke was unable to correct.

46. She assumed his injury and subsequent surgeries were work-related.

47. She then requested information from Mr. Burke's doctor, mistakenly indicating that Mr. Burke operated heavy equipment and large trucks.

48. Mr. Burke corrected her and explained multiple times that he did not operate heavy equipment or large trucks for his job with National Grid.

49. Furthermore, he explained that he had taken a supervisory position specifically so that he would not have to operate heavy machinery.

50. After his visit with the nurse, National Grid conducted an extensive, invasive, and needless investigation into Mr. Burke's medical history.

51. Mr. Burke was required to visit his doctor multiple times and his doctor provided two letters dated February 4, 2021, and March 23, 2021, stating that Mr. Burke was medically stable and able to perform his job without impairment.

52. National Grid's nurse then requested Mr. Burke's doctor to provide his medical history and prescription records going back to 2013.

53. Mr. Burke's doctor questioned why he was being asked to provide such extensive records.

54. National Grid then ordered Mr. Burke to undergo an independent medical examination ("IME") by a company-chosen doctor.

55. The doctor chosen by National Grid was not a specialist, not primary care physician, and incredibly, not even a medical doctor, but a chiropractor.

56. Despite the assurances of confidentiality, Mr. Burke's manager, Endrit Fiku, was made aware of the inquiry into Mr. Burke's medical records.

57. When Mr. Burke stated given the scope of records National Grid was requesting, he was uncomfortable providing the records, Mr. Fiku assured him that Mr. Burke was a great employee, he was up for a promotion, and that he should provide the requested records.

58. Mr. Burke then provided the requested medical records.

59. Given the questions about his medical condition, Mr. Burke became concerned and applied for intermittent leave under the Family Medical Leave Act, which was granted.

60. On March 23, 2021, Mr. Burke sent an email to the Health and Wellness Manager and his managers expressing concerns about the inquiry into his medical history.

61. He expressed fear that National Grid was stigmatizing him as unable to do his job or as a liability due to his disability.

62. Mr. Burke pointed out National Grid's own policy, which recognized that employees may take prescribed medications and still be able to work under medical advice.

63. On March 30, 2021, while on his way to work, Mr. Burke received a phone call from National Grid, terminating his employment.

64. When asked why, he was told that he had checked the wrong box on his DOT license renewal in 2019, indicating that he was not taking any medication.

65. Mr. Burke was unable to recall what he had written on the renewal form two years ago or whether he was taking any medication at that time or not.

66. Mr. Burke was given no opportunity to respond.

67. His license had been renewed without a problem.

68. In fact, during his medical examination for the DOT card renewal, Mr. Burke disclosed to the physician every medication he was taking.

69. That physician had the ability to renew his DOT card for less than two years, requiring more frequent medical examinations.

70. The physician doing the DOT examination was not concerned in the least about Mr. Burke's medications and renewed his DOT card for the full two-year period.

71. In January 2021, Mr. Burke had responded to a company survey, which comes out on an annual basis.

72. Although the survey is supposed to be anonymous, supervisors fill it out from a company laptop.

73. In 2020 Mr. Burke received the highest scores on the survey in his group.

74. His manager told everyone that his team had rated him higher than anyone else, and the other supervisors needed to step it up.

75. On the January 2021 survey, as he had grown more comfortable with the company, Mr. Burke stated he had a disability and discussed his sexual orientation (bisexual/gay), which he had not disclosed beforehand.

76. The questions about his medical condition began shortly thereafter, and the termination of his employment followed quickly.

77. His employment was terminated two days before performance bonuses would normally have been paid to employees.

78. Since his termination and subsequent hire by a company in a related field, Mr. Burke's company has been denied contracts with National Grid once National Grid discovers Mr. Burke will be involved.

## COUNT I

### Violation of 42 U.S.C. § 12112

79. Plaintiff reasserts and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

80. Mr. Burke is a "person with a disability" or "qualified handicapped person" under federal law based on his injuries. *See* 42 U.S.C. § 12112.

81. Furthermore, he may separately be found to be a person with a disability under the law on account of being "regarded as having such impairment." *See Sensing v. Outback Steakhouse of Fla.*, 575 F.3d 145 (1st Cir. 2009).

82. "[42 U.S.C. §] 12112(d)(4)(A) prohibits employers from using medical exams as a pretext to harass employees or to fish for nonwork-related medical issues and the attendant 'unwanted exposure of the employee's disability and the stigma it may carry.'" *Lopez-Lopez v. Robinson Sch.*, 958 F.3d 96, 105 (1st Cir. 2020), *quoting EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1094 n.8 (6th Cir. 1998).

83. To justify a medical inquiry, the employer must be able to demonstrate that an employee is unable to perform the job's essential functions because of a medical condition or the employee will pose a direct threat to himself or to others because of a medical condition.

84. Mr. Burke passed his drug test.

85. National Grid continued the inquiry even after it was made clear that Mr. Burke did not operate heavy equipment or drive trucks.

86. National Grid had no business necessity to force Mr. Burke into revealing his medical history and undergo and IME either for job performance or safety reasons.

87. The mere possibility of future injury is not sufficient justification for termination of a handicapped individual; rather "there must be a showing of reasonable probability of substantial harm." *Mantolete v. Bolger*, 767 F. 2d 1416, 1422 (9th Cir. 1985).

88. Once National Grid learned of Mr. Burke's disability and medical history, they terminated him.

89. Mr. Burke suffered loss and continues to suffer loss on account of National Grid's discriminatory actions.

## COUNT II

### Violation of M.G.L. c. 151B §4 (16) – Disability Discrimination

90. Plaintiff reasserts and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

91. Mr. Burke is a "person with a disability" or "qualified handicapped person" under state law based on his injuries. *See* M.G. L. c. 151B, § 1(16).

92. Furthermore, he may separately be found to be a person with a disability under the law on account of National Grid perceiving him as disabled.

93. Mr. Burke was qualified to perform the essential functions of his job with accommodation, i.e., allowing him to continue under his current medication regiment.

94. Allowing Mr. Burke to use his medication, as directed and overseen by his doctor, in order for him to perform his job was a reasonable accommodation.

95. Where a medication in violation of an employer' drug policy, in the opinion of the employee's physician, is the most effective medication, and where alternative medication, whose use is allowed by the employer's drug policy, would be less effective,

an exception to an employer's drug policy to permit its use is a facially reasonable

accommodation. *Barbuto v. Advantage Sales Mktg., LLC* 477 Mass. 456, 464 (2017).

96. National Grid by terminating Mr. Burke's employment because of his medical record,

discriminated against Mr. Burke.

97. Mr. Burke suffered loss and continues to suffer loss on account of National Grid's

discriminatory actions.

## COUNT III

### Violation of M.G.L. c. 151B §4 (16) – Sexual Discrimination

98. Plaintiff reasserts and re-alleges the allegations in the preceding paragraphs as if fully set

forth herein.

99. Mr. Burke, as a bi-sexual man, belongs to a protected class.

100.  His job performance and employment history with National Grid  was exemplary.

101.  After disclosing his status as bi-sexual to his superiors, he was terminated from

his position with National Grid.

102.  National Grid immediately sought to replace Mr. Burke with a new employee

with roughly the same equivalent qualifications.

103.  National Grid, by its actions, discriminated against Mr. Burke for his sexual

orientation.

104.   Mr. Burke suffered loss and continues to suffer loss on account of National

Grid's discriminatory actions.

## COUNT IV

### Violation of 29 U.S.C. § 2516(a)

### Family Medical Leave Act

105.     Plaintiff reasserts and re-alleges the allegations in the preceding paragraphs as if

fully set forth herein.

106.     Mr. Burke, as a result of his injuries, applied for intermittent leave under the

Family Medical Leave Act, in early 2021.

107.     Mr. Burke was approved for leave by National Grid.

108.     Mr. Burke was terminated from his position the day after his approval of FMLA

leave.

109.     National Grid terminated Mr. Burke's employment because of his medical

reasons for taking leave.

110.     Mr. Burke suffered loss and continues to suffer loss on account of National Grid's

discriminatory actions.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff claims:

1.  Damages in an amount to be determined at trial including but not limited to damages

    for lost wages;

2.  Costs and attorneys' fees; and

3.  Such other legal or equitable relief as the Court may award.

Respectfully submitted,
BRIAN BURKE,
By his attorneys:

_____
Emily Smith-Lee (BBO#634223)
esmithlee@slnlaw.com
Jenna Ordway (BBO#687539)
jordway@slnlaw.com
SLN LAW, LLC
46 South Main Street
Sharon, MA  02067
(781)784-2322

Dated:  March 10, 2022.

# EXHIBIT A



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### ONE ASHBURTON PLACE
### BOSTON, MASSACHUSETTS 02108

MAURA HEALEY
ATTORNEY GENERAL

(617) 727-2200
(617) 727-4765 TTY
www.mass.gov/ago

June 8, 2021

Attorney Jean Zeiler
P.O. Box 470
Dedham, MA  02027

RE:     Brian Burke
        Request for Private Right of Action against National Grid

Dear Attorney Zeiler:

Thank you for contacting the Office of the Attorney General's Fair Labor Division.

Massachusetts General Laws Chapter 149, § 150, and Chapter 151, §§ 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws.

This letter is to inform you that we are authorizing you to pursue this matter through a private civil lawsuit.  If you elect to sue in civil court, you may bring an action on your own or your clients' behalf, and on behalf of other similarly situated workers.

This office will not pursue an investigation or enforcement at this time.

                          Sincerely,

                          Fair Labor Division
                          Office of Attorney General Maura Healey
                          (617) 727-3465

This document contains important information. Please have it translated immediately.

В данном документе содержится важная информация. Вам необходимо срочно сделать перевод документа.

Este documento contiene información importante. Por favor, consiga una traducción inmediatamente.

تحتوي هذه الوثيقة على معلومات هامة. يرجى ترجمتها فوراً.

Docikman sa gen enfòmasyon enpòtan. Tanpri fè yon moun tradwi l touswit.

Questo documento contiene informazioni importanti. La preghiamo di tradurlo inmediatamente.

Este documento contém informações importantes. Por favor, traduzi-lo imediatamente.

此文件含有重要信息。
請立即找人翻譯。

본 문서에는 중요한 정보가 포함되어 있습니다. 본 문서를 즉시 번역하도록 하십시오.

Tài liệu này có chứa thông tin quan trọng. Vui lòng dịch tài liệu này ngay.

ເອກະສານສະບັບນີ້ ບັນຈຸຂໍ້ມູນອັນສຳຄັນ. ກະລຸນາເອົາເອກະສານສະບັບນີ້ໄປແປອອກ ຢ່າງບໍ່ລີຊ້າ.

ឯកសារនេះមានខ្លឹមព័ត៌មានយ៉ាងសំខាន់ ។
សូមបកប្រែវាជាបន្ទាន់ ។

Ce document contient des informations importantes. Veuillez le faire traduire au plus tôt.

# EXHIBIT B

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To | Brian K. Burke<br>9 Lake Rd<br>Charlton, MA 01507 | From | Boston Area Office<br>John F. Kennedy Fed Bldg<br>15 New Sudbury Street, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601 7(a))* |
|---|---|

| EEOC Charge No | EEOC Representative | Telephone No |
|---|---|---|
| **523-2021-01178** | **Susan M. Boscia,**<br>**Investigator** | **(617) 865-3682** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes

☐ Your charge was not timely filed with EEOC, in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination  The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute  This does not mean the claims have no merit  This determination does not certify that the respondent is in compliance with the statutes  The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form )*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice, or your right to sue based on this charge will be lost  (The time limit for filing suit based on a claim under state law may be different )

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Feng K. An,**
**Area Office Director**

December 27, 2021

*(Date Issued)*

Enclosures(s)

cc
Jennifer Geosits
Senior Counsel
**NATIONAL GRID USA**
40 Sylvan Rd
Waltham, MA 02451

Jean Zeiler, Esq.
P.O. Box 470
Dedham, MA 02027

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>*
*If you also plan to sue claiming violations of State law  please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below )*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice   Therefore, you should **keep a record of this date**   Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost   If you intend to consult an attorney, you should do so promptly   Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it   Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later

Your lawsuit may be filed in U S  District Court or a State court of competent jurisdiction   (Usually, the appropriate State court is the general civil trial court )   Whether you file in Federal or State court is a matter for you to decide after talking to your attorney   Filing this Notice is not enough   You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief   Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge   Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office   If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment  back pay due for violations that occurred **more than** <u>2 years (3 years)</u> before you file suit may not be collectible   For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008   This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above   Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U S  District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer   Requests for such assistance must be made to the U S  District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney)   Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U S  District Court can hear your case   If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice)   While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case   Therefore, if you file suit and want to review the charge file, **please make your review request** <u>within 6 months</u> **of this Notice**   (Before filing suit, any request should be made within the next 90 days )

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT C

**national grid**

January 12, 2021

Brian K Burke
9 Lake Road
Charlton, MA 01507

Dear Brian,

I would like to thank you all for your hard work this past year. You and your team demonstrated that Capital Delivery Electric is up to any challenge.

You demonstrated the *company values* throughout this extraordinarily challenging year. *You made it happen* by delivering challenging projects and leading your teams through storm events. *You found a better way* by adapting to new ways of working forced on us through COVID protocols all while keeping safety in the forefront of your decisions. The team continues to do the right thing every day.

Capital Delivery Electric recognizes your efforts in continuing to keep up our quality and safety records this past year.

Looking forward to a safe and healthy new year.

Andrew



**nationalgrid**

Good Day Team,

We hope that you and your families are safe and doing well.

On behalf of the Construction and Project Management Directors we would like to thank you for your continued diligence regarding safety. As we approach Safety Leadership Day, the leadership team would like to recognize your hard work in reducing team vehicle Road Traffic Collisions (RTCs). Over the past three years' time, your efforts have produced a 94% reduction in group RTCs.

Please accept this "I drive safe for" visor frame/clip as a token of our appreciation.

Stay safe out there.

Andrew, Marc, Shaun & Walt

# national**grid**

January 28, 2020

Brian K Burke
9 Lake Road
Charlton, MA 01507

Dear Brian,

### Substation In-House Construction, New England
### No Lost Time Incident for 6 Years

On January 10, 2020, we reached a significant safety milestone in Substation In-House Construction, six years without a lost time incident. Achieving six years without a lost time incident is a great accomplishment which demonstrates a commitment to the doing excellent work every day.  It means that you and your colleagues took the time and made the effort every day to put your personal safety and that of your fellow employees' first for 2190 days and counting! Nothing is more important than going home safely to your family and those you care about at the end of the workday, while continuing to provide safe, reliable service to our customers.

We say that safety is at the core of everything we do. We are extremely proud that over the six years Substation In-House Construction, New England has lived that statement. Congratulations on this milestone achievement and let's keep it going in 2020 and beyond!

Yours sincerely,

Brian Gemmell                         R. Andrew Schneller                         Endrit Fiku

# EXHIBIT 2

| **Summons** | CIVIL DOCKET NO.<br>2285CV0286B | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>Brian Burke<br><br>Plaintiff(s)<br><br>vs.<br><br>National Grid USA Service Company, Inc.<br><br>Defendant(s) | Dennis P. McManus      Clerk of Courts<br>Worcester          County<br>COURT NAME & ADDRESS:<br>Worcester Superior Court<br>225 Main Street<br>Worcester, MA 01608 |
|---|---|

THIS SUMMONS IS DIRECTED TO  National Grid USA Service Company Inc (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the  Worcester Superior  Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business,  Worcester Superior  Court  225 Main Street, Worcester, MA 01608 (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:  Jenna Ordway, 46 South Main Street, Sharon, MA 02067

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A true copy Attest:
3-31-22   Deputy Sheriff Suffolk County

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____, Chief Justice on _____, 20_____. (Seal)

Clerk-Magistrate _____

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____         Signature: _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date:

# EXHIBIT 3

4/13

| **Summons** | CIVIL DOCKET NO.<br>2285CV0286B | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME:

Brian Burke

Plaintiff(s)

vs.

National Grid USA Service Company, Inc.

Defendant(s)

Dennis P. McManus          Clerk of Courts

Worcester          County

COURT NAME & ADDRESS:

Worcester Superior Court

225 Main Street

Worcester, MA 01608

**FILED**

APR 13 2022

ATTEST:

_Del Hoth_   CLERK

THIS SUMMONS IS DIRECTED TO  National Grid USA Service Company Inc (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the  Worcester Superior  Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

3#

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business,  Worcester Superior  Court  225 Main Street, Worcester, MA 01608 (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

Jenna Ordway, 46 South Main Street, Sharon, MA 02067

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger                    , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS



**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

**April 7, 2022**

**I hereby certify and return that on 4/6/2022 at 2:47 PM I served a true and attested copy of the Summons, Complaint and Exhibits in this action in the following manner: To wit, by delivering in hand to Bernardo Montanez,  agent and person in charge at the time of service for National Grid USA Service Company Inc., at 84 State Street Corporation Service Company Boston, MA 02109 . Attest/Copies ($5.00) Basic Service Fee (IH) ($30.00) Conveyance ($0.30) Postage and Handling ($1.00) Travel ($20.80) Total: $57.10**

Deputy Sheriff    John Johnson

_____
*Deputy Sheriff*

Date:

rev. 1/2019